**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-443-DLB**

**YOVANIS VARGAS GONZALEZ** **PETITIONER**

**v.** **MEMORANDUM OPINION AND ORDER**

**FRANK PADULA, et al.,** **RESPONDENTS**

* * * * * * * * * *

## I. INTRODUCTION

This matter is before the Court on Petitioner Yovanis Vargas Gonzalez's Petition for Writ of Habeas Corpus. (Doc. # 1). Respondents filed their Responses[1] (Docs. # 5 and 7) and Petitioner filed a timely reply (Doc. # 8). Accordingly, this matter is now ripe for review. For the following reasons, the Court will **grant** the Petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a citizen of Colombia. (Doc. # 1 ¶ 2). He presented himself at the Nogales, Arizona port of entry on October 29, 2024. (*Id.*). That same day, Petitioner was served with a Notice to Appear ("NTA") and was paroled into the country. (*Id.*; Doc # 1-4). Petitioner was originally granted humanitarian parole through October 29, 2026. (Doc. # 1 ¶ 32). On June 16, 2026, Petitioner was arrested in Chicago, Illinois and taken into Immigration and Customs Enforcement ("ICE") Custody. (*Id.* ¶ ¶ 33, 40). On October

[1] Petitioner files this action against Frank Padula, Interim Director, Chicago Field Office, Immigration and Customs Enforcement; Markwayne Mullin, Secretary of Homeland Security, Todd Blanche, Attorney General for the United States, and James Daley, Jailer, Campbell County Detention Center. (Doc. # 1).

1, 2026, through his counsel, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal, with the Memphis Immigration Court, where his case has been transferred. Petitioner's removal proceeding is pending before the Immigration Court, and his next hearing is scheduled for November 19, 2026. (*Id.* ¶ 43).

On October 16, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. # 1). In his petition, Gonzalez argues that he is being unlawfully detained at the Campbell County Detention Center in Newport, Kentucky and requests that the Court order his immediate release or, in the alternative, that he receive a bond hearing pursuant to 8 U.S.C. § 1226(A). (Doc. # 1 at 29). On October 19, 2026, the Court directed Respondents to respond to the Petition. (Doc. # 3). Respondents having filed their Responses (Docs. # 5, 7) and Petitioner having filed his Reply (Doc. # 8), this matter is ripe for the Court's review.

## III. ANALYSIS

Gonzalez brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. At its core, habeas provides "a remedy for unlawful executive detention," *Munaf v. Geren*, 553 U.S. 674, 693 (2008), available to "every individual detained within the United States," *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The "typical remedy for such detention is, of course, release." *Munaf*, 553 U.S. at 693. Such relief "may be granted by the . . . district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more."). Enacted in 1952, the Immigration and Nationality Act ("INA")

consolidated previous immigration and nationality laws and now contains "many of the most important provisions of immigration law." U.S. Citizenship and Immigration Services, *Immigration and Nationality Act* (July 10, 2019), https://www.uscis.gov/lawsandpolicy/legislation/immigrationandnationalityact#:~:text=The%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Representatives. Respondents argue that Petitioner is held under 8 U.S.C. § 1225(b)(2) while Petitioner argues that he is being held under § 1226(a).

Respondents argue that this case turns on whether Petitioner is subject to 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226. (Doc. # 5 at 4). Petitioner contends that he is detained under 8 U.S.C. § 1226. He argues that the Respondents improperly revoked his parole when they failed to give notice or conduct an individualized, case-by-case assessment, in violation of his due process rights. (Doc. # 1 at 7). Accordingly, Petitioner argues his Fifth Amendment due process rights are being violated and petitions this Court to "immediately release [him]." (*Id*. at 30). In the alternative, Petitioner seeks a bond hearing pursuant to 8 U.S.C. § 1226. (*Id*.).[2]

**A. Proper Respondents**

Before turning to Petitioner's substantive argument, the Court will address Respondent Daley's contention that he is not a suitable respondent. (Doc. # 7 at 2). "[T]he federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" *Rumsfeld v. Padilla*,

[2] Gonzalez also asserts claims under the Administrative Procedure Act ("APA"). (Doc. # 1 at 29-30). Respondents argue that Gonzalez's APA claims may not proceed in combination with his habeas corpus claims. (Doc. # 5 at 14). Because the Court, for reasons that follow, finds that Petitioner is entitled to relief under the Fifth Amendment, the Court need not address whether the APA affords him the same relief.

542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). The Supreme Court has held that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. Similarly, this Court has held that, where an immigration detainee files a petition for writ of habeas corpus, the jailer is a proper respondent. *M.T.B. v. Byers*, No. 2:24-cv-082-DCR, 2024 WL 3881843, at *1 (E.D. Ky. Aug. 20, 2024). Indeed, "as the person who has 'day-to-day control over the facility in which [Gonzalez] is being detained,' Daley is [Gonzalez's] custodian." *Id.* (quoting *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)). Petitioner is presently detained at the Campbell County Jail. (Doc. # 1 ¶ 1). Daley, as the elected Jailer, "oversee[s] and operate[s]" the Boone County Jail. (*Id.*). Therefore, Daley is a proper respondent to Gonzalez's Petition. *See Padilla*, 542 U.S. at 447; *Byers*, 2024 WL 3881843, at *1. Accordingly, the Court will deny Daley's request to dismiss him as a respondent. Having concluded that Daley is a proper respondent, the Court turns to the substantive arguments Petitioner raises in his Petition.

**B. Parole**

The implementing regulation governing the parole of aliens into the United States is codified at 8 C.F.R. § 212.5. This section of the Code of Federal Regulations outlines who can and cannot be given parole, the circumstances that allow for the grant of parole, the conditions of parole, and—most importantly for this case—the termination of parole. 8 C.F.R § 212.5(a)–(e). Parole of aliens may be terminated either automatically or upon written notice from the appropriate officials. *Id.* § 212.5(e). Parole terminates automatically without notice when the noncitizen either departs the United States or when

the parole period expires. *Id.* § 212.5(e)(1). Conversely, if the purpose of parole is accomplished or an officer finds neither humanitarian reasons nor public benefits warrant the noncitizen's continued presence in the United States, "parole shall be terminated upon *written notice* to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.* § 223.5(e)(2)(i) (emphasis added). Put another way, "[u]nder the governing regulation, [§ 1182(d)(5)(A)] parole may be terminated only if the purpose of parole is accomplished, or humanitarian reasons and the public benefit no longer warrant parole." *Loaiza Arias v. LaRose*, No. 3:25-cv-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025).

Petitioner argues that his due process rights are being violated because Respondents did not properly terminate his parole before placing him in ICE detention. (Doc. # 1 ¶ 10). On October 29, 2024, Petitioner was paroled into the United States for a period of two years. (Doc. # 1-2). Petitioner was transferred to ICE custody on June 16, 2026. (Doc. # 1 ¶ 5). Meaning that, at the time Petitioner was transferred to ICE custody, his parole had not yet automatically expired. Because Petitioner had clearly not departed from the United States and his parole period had not expired, the only way Petitioner's parole could have been terminated at the time he was transferred to ICE custody was if an officer found that humanitarian reasons and the public benefit no longer warrant parole. And even then, Respondents would have had to provide Petitioner with written notice of his revocation and an opportunity to respond. Petitioner alleges neither occurred. Respondents argue that "Petitioner's parole was terminated by notice on June

17, 2026, when he was taken into custody, and this notice was served upon him. Therefore, Petitioner's parole was properly terminated."[3] (*Id*. at 3).

Because Petitioner's parole did not automatically terminate, Respondents need to show they provided Petitioner with notice of the termination of his parole at the time he was originally detained.[4] They have failed to do so. Petitioner was arrested on June 16. The I-200 arrest warrant is dated June 16, 2026 and reflects service on June 17, 2026. (Doc. # 5-2). The parole-termination letter is dated June 17, 2026. (Doc. # 5-3). The I-200 Warrant did not put Petitioner on notice that his parole status was being terminated. First, the Warrant did not mention his parole or include any language that explicitly states that his parole status was being terminated. Second, given that Petitioner contends that he complied with ICE and DHS's directives while his asylum application was pending (and remains pending), he certainly would not have known his parole status was in jeopardy without explicit, written notice at the time of his arrest. Indeed, this Court has previously concluded that a warrant which "does not make any mention of [Petitioner's parole]" does not "allow[] the Court to conclude that DHS made a 'case-by-base' assessment required to terminate [Petitioner's] parole." *Rassul v. Field Officer Director*, No. 2:25-cv-232-DLB,

---

[3] Respondents also argue that "this Court lacks jurisdiction to review grants and terminations of parole." (Doc. # 5 at 3). Respondents mischaracterize Petitioner's argument. Petitioner does not argue that the government does not have the authority to terminate parole. Rather, he is arguing that in invoking that authority, the government must follow its own guidelines, which it has failed to do, resulting in a violation of his due process rights. Review of a noncitizen's due process claim is squarely in this Court's jurisdiction.

[4] Any argument that the June 17, 2026 Notice would retroactively cure an unlawful arrest into a lawful one is rejected. *See Saengphet v. Noem*, 815 F. Supp. 3d 1142, 1152-53 (S.D. Cal. 2025) ("After-the-fact determinations in an attempt to justify a noncitizen's re-detention cannot cure the Government's blatant procedural errors."); *Rujano v. Lynch*, No. 1:25-cv-1631, 2026 WL 18618, at *4 (W.D. Mich. Jan. 2, 2026) ("Respondents do not explain, and the Court fails to discern, how a determination made *after* Petitioner's arrest could show that ICE made any individualized determination about Petitioner's parole *prior* to Petitioners arrest") (emphasis in original).

2026 WL 834737, at *5 (E.D. Ky. Mar. 26, 2026) (quoting *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025)).

Therefore, because the Warrant lacked the requisite notice and ICE provided no additional charging document, the Court finds that the June 16, 2026 warrant did not provide effective written notice of the termination of Petitioner's parole, in violation of 8 U.S.C. § 1182(d)(5)(A). Accordingly, Petitioner was still on parole when he was arrested and detained by ICE on June 16, 2026.

As a result, because Petitioner was still on parole when he was detained, he "'was in custody in violation of the laws of the United States.'" *Darwich v. Kemerling*, No. 1:25-cv-1162, 2026 WL 170801, at *2 (M.D.N.C. Jan. 22, 2026) (quoting 28 U.S.C. 2241(c)(3)). This Court, along with many others, has found that detaining someone without properly terminating their parole is a violation of the noncitizen's due process rights. *See Rassul*, 2026 WL 834737, at *6 ("Rassul's detention violates the due process rights afforded to him by the Fifth Amendment[.]"); *Darwich*, 2026 WL 170801, at *5 ("Arresting someone on parole who remains in exclusion proceedings without terminating his parole is illegal and in violation of the laws of the United States."); *Rujano*, 2026 WL 18618, at *5 ("[T]here is no indication that Respondents followed the applicable statutory and regulatory requirements to revoke or terminate Petitioner's parole. If Respondents did not follow those requirements, then they did not have the authority to arrest and detain Petitioner[.]"); *Saengphet*, 815 F. Supp. 3d at 1148 (finding a "clear violation of Petitioner's due process rights" because petitioner was "substantially prejudiced" when the government "failed to comply with its regulations that govern the re-detention of

noncitizens.”). Accordingly, Respondents violated Petitioner’s Fifth Amendment due process rights when they detained him without properly revoking his parole first.

**C. Remedy**

Because this Court has concluded that Petitioner’s rights were violated when Respondents detained him without properly revoking his parole, the Court must determine what the proper remedy is. Petitioner requests immediate release or, in the alternative, a bond hearing. (Doc. # 1 at 30).

Previously, in cases where the government had not properly revoked a noncitizen’s parole prior to ICE detention, this Court had concluded that the proper remedy was immediate release pursuant to the conditions of the noncitizen’s parole. *See Rassul*, 2026 WL 834737, at *6 (“As other courts have concluded, [the petitioner’s] detention violates the due process rights afforded to him by the Fifth Amendment and he is therefore entitled to be released from ICE custody.”). In those instances, the noncitizen’s parole had not automatically expired, the purpose of the parole had not been completed, nor had any officer made a determination that humanitarian and public benefit no longer warranted parole *at the time the Court issued its order.* Here, the facts differ.

Petitioner was paroled into the country on October 29, 2024, with his parole set to automatically expire after two years. (Doc. # 1-2). Petitioner was detained by ICE on June 16, 2026, more than four months before his parole was set to expire. (*Id*). So, when Petitioner was originally detained, his detention was a violation of his due process rights, and consistent with this Court’s previous orders, the proper remedy would have been release. However, since being detained, Petitioner’s parole has automatically expired. Automatic expiration does not require any form of notice. Moreover, to the extent this

Court is aware, improper ICE detention—while a serious constitutional violation—does not pause or modify Petitioner's parole expiration date. Thus, the difference between this Court's former cases and the one presently before this Court is that, previously, the noncitizens had an active parole to return to. Not so with Petitioner: because his parole automatically expired on October 29, 2026, there is simply no parole for Petitioner to return to. Moreover, this Court does not have the jurisdiction to order DHS to return a noncitizen to the conditions of their parole when that parole has since expired. Such an act would be, in essence, granting that noncitizen an additional period of parole, which is a discretionary administrative decision best left to the Attorney General. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) ("Notwithstanding any other provision of law ... no court shall have jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of Homeland Security ....).

Because the Court is unable to order Petitioner released pursuant to the terms of his parole, it must determine whether it can grant Petitioner's alternative requested relief—a bond hearing under 8 U.S.C. § 1226(a).

### *1. Application of 8 U.S.C. § 1226(a)*

Respondents argue that upon the expiration of parole, 8 U.S.C. § 1182(d)(5)(A), expiration returns the parolee "to the custody from which he was paroled." (Doc. # 5 at 10) (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also Linarez v. Stamper*, No. 1:26-cv-101-JAW, 2026 WL 592294, at *5 (D. Me. Mar. 3, 2026). Respondents believe Petitioner should return to his status as an "arriving alien" subject to mandatory detention without a bond hearing pursuant to 8 U.S.C. § 1225(b)(2). (Doc. # 4 at 5). However, this Court has previously concluded that "'the expiration of § 1182 parole does not require treating the

noncitizen as if they had never been paroled in the first place.'" *Araque-Marquez v. Olson*, 26-84-DLB, 2026 WL 836121, at * 2 (E.D. Ky. Mar. 26, 2026) (citing *Linarez*, 2026 WL 592294, at *5). In coming to this conclusion, the Court noted that '"Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subject to expedited removal."' *Id*. (citing *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065, 2025 WL 3314420, at *17 (E.D.N.Y. Nov. 28, 2025)). This Court and numerous other district courts have found that the expiration of parole does not return the undocumented immigrant to the status of an "arriving alien" at the threshold of the United States. *See, e.g., Bezkada v. Fields*, No. 26-cv-57-DLB, 2026 WL 696555, at *2 (E.D. Ky. Mar. 12, 2026); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry."); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at * 15 (D. Vt. Dec. 11, 2025) (finding it "absurd" "unjust" and "counterintuitive" that the idea that the expiration of a petitioner's parole would place him in the "perpetual status as an 'arriving alien'"); *Linarez*, 2026 WL 592294, at * 6 ("The expiration of [the petitioner's] parole does not renew the requirement to return to a port of entry and undergo a new inspection or screening.").

"This logic applies neatly to the facts in [Petitioner's] case, who, having previously been paroled by CBP, is already present in the United States with a pending asylum application. The expiration of [his] parole does not renew the requirement to return to a port of entry and undergo a new inspection or screening." *Id*. Certainly, Petitioner is

unable to do such a thing considering he was detained unlawfully and remains detained. Petitioner has pursued a lawful pathway to asylum. He applied for asylum before his original parole period expired. Moreover, even though his parole period has now expired, Petitioner continues to pursue his asylum application. Therefore, "any determination as to [Petitioner's] detention must be conducted under the discretionary framework of Section 1226(a), which 'governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal,' including expired parolees within the United States pending the adjudication of their asylum claim." *Id.* (quoting *Tumba v. Francis*, 813 F. Supp. 3d 394, 399-400 (S.D.N.Y. 2025)).[5] This conclusion is bolstered by the fact that the Warrant served to Petitioner cited INA § 236 as the authority for his detention. (Doc. # 5-2). INA § 236 is codified at 8 U.S.C. § 1226.

On May 11, 2026, the Sixth Circuit issued its decision in *Lopez-Campos v. Raycraft*, wherein it determined that § 1226 is the properly applied statutory provision for detaining noncitizens who arrived in the United States without inspection. 175 F.4th 713,

[5] As noted above, this Court has repeatedly come to this same conclusion. See *Araque-Marquez*, 2026 WL 836121, at * 2; *Penott Rodriquez v. Fields*, No. 26-117-DLB, 2026 WL 1078101, at *3 (E.D. Ky. Apr. 21, 2026); *Polanco v. Fields*, No. 26-59-DLB, 2026 WL 1134682, at *2 (E.D. Ky. Apr. 27, 2026); *Bekzada v. Fields*, No. 26-57-DLB, 2026 WL 696555, at *2 (E.D. Ky. Mar. 12, 2026); *Matkarimov v. Noem*, No. 26-48-DLB, 2026 WL 700072, at *2 (E.D. Ky. Mar. 12, 2026). This case differs slightly in that Petitioner was in ICE detention when his parole automatically expired, whereas in cases previously before this Court, the petitioners remained free from ICE detention for months or years after their parole expired. The Court does not find this factual difference to be fatal to its analysis. Neither party has presented such an argument. Nor has the Court been able to find any case law that would allow it to conclude that a noncitizen whose parole expired *after they were unlawfully detained* should be held under 1225(b)(2) solely because they were in ICE detention when their parole expired. Such a conclusion would provide DHS a loophole—detain a noncitizen without properly revoking their parole in the days before their parole is set to automatically expire, allowing DHS to circumvent administrative paperwork, and ensure that by the time the noncitizen's habeas petition makes its way to the district court, his parole has legally automatically expired and he is being detained pursuant to 1225(b)(2) as opposed to 1226(a).

732 (6th Cir. 2026). In its opinion, the Sixth Circuit affirmed the judgments of four district courts below, determining that the "text, canons, and past practice" of two statutes all support the conclusion that the petitioners were not subject to the mandatory detention provisions of § 1225. *Id.* at 725. Accordingly, the Circuit rejected the government's position that § 1225 governs noncitizen detainees, concluding that "[t]o hold otherwise would subject long-term law-abiding residents in the United States. . . to the hardship of mandatory detention without due process." *Id.* at 735.

The same reasoning applies here. Petitioner has been in the United States for over two years. (Doc. # 1 ¶ 2). After being detained at the border he was released on parole. Prior to his parole expiring, he was arrested via a I-200 Warrant which authorized Petitioner's detention under 8 U.S.C. § 1226. Petitioner has remained in ICE custody since his initial detention with no access to a bond hearing. Accordingly, pursuant to the Sixth Circuit's recent opinion in *Lopez-Campos*, the Court concludes that § 1226 governs Petitioner's detention.

**D. Due Process**

Because the Court has concluded that Petitioner is being held pursuant to § 1226, the Court must now determine whether his current detention violates his due process rights.

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal

proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))). To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Petitioner, having previously been granted parole in order to seek asylum, has a cognizable private interest in avoiding detention. *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas v. Davis*, 533 U.S. 679, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in freedom from detention pending the resolution of removal proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903).

Second, the risk of erroneous deprivation of that interest is high if Petitioner is never afforded a bond hearing. *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's

liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted). To date, Petitioner has not had any sort of individualized bond hearing, nor did he *ever* have an individualized hearing on his parole revocation despite being in ICE detention. Thus, Petitioner's present detention creates a high risk of an erroneous deprivation of his liberty interest. Accordingly, the second *Mathews* factor favors Petitioner.

As to the third factor, the public interest, the United States has a strong interest in governing immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length above, "serve the governmental interest in public safety." *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *7 (W.D. Ky. Sep. 19, 2025) (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three factors weigh in favor of Petitioner.

While Respondents correctly note that the Government may constitutionally detain deportable noncitizens during the pendency of removal proceedings, courts all across the country, including this Court, have found that a noncitizen's detention violates the due process rights afforded to him by the Fifth Amendment when he was detained without access to an individualized hearing. And while the Court has already concluded that release is not the proper remedy, it finds that a constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence is the proper remedy. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("[T]he government must bear the burden of proving dangerousness or flight risk in order to

continue detaining a noncitizen under section 1226(a)"); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2nd Cir. 2020) (finding that the "district court correctly ordered a new bond hearing where the Government bore the burden of proof"); *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88 (W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1) Gonzalez's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2) Respondents are **ORDERED** provide Petitioner with a **constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence** under 8 U.S.C. § 1226(a) **within ten (10) days of the date of this Order**; and

(3) Respondents shall file a Status Report with this Court **on or before December 2, 2026** to certify compliance with this Order. The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 18th day of November, 2026.

**Signed By:**

***David L. Bunning*** DB

**Chief United States District Judge**